| | | |
|---|---|---|
| DIVANE PITTMAN | * | IN THE |
| c/o Brown, Goldstein & Levy LLP | | |
| 120 E. Baltimore Street, Suite 2500 | * | CIRCUIT COURT |
| Baltimore, Maryland 21202 | | |
| | * | FOR MONTGOMERY COUNTY |
| *On her own behalf and on behalf of* | | |
| *all others similarly situated,* | * | Case No. C-15-cv-22-002594 |
| | | |
| Plaintiff, | * | |
| | | |
| v. | * | **CLASS ACTION COMPLAINT** |
| | | |
| BUFFALO WILD WINGS | * | |
| INTERNATIONAL, INC. | | |
| 5500 Wayzata Blvd, Suite 1600 | | |
| Minneapolis, Minnesota 55416 | * | |
| | | |
| Serve:  Resident Agent | * | |
|         CSC-Lawyers | | |
|         Incorporating Service Company | * | |
|         7 St. Paul Street | | |
|         Baltimore, Maryland 21202, | * | |
| | | |
| and | * | |
| | | |
| INSPIRE BRANDS, INC. | * | |
| 3 Glenlake Parkway, NE | | |
| Atlanta, Georgia 30328, | * | |
| | | |
| Defendants. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Divane Pittman, on behalf of herself and all others similarly situated, by and

through her undersigned attorneys, sues Defendants Buffalo Wild Wings International, Inc.

("Buffalo Wild Wings") and Inspire Brands, Inc. ("Inspire Brands") and alleges upon

information and belief based, among other things, upon the investigation made by Plaintiff and

through her attorneys as follows:

**PARTIES**

1.      Plaintiff Divane Pittman is a citizen of the State of Maryland who lives in

Lanham, Maryland and resided there at all times relevant to this Complaint.

2.      Defendant Buffalo Wild Wings is incorporated in Ohio and maintains its principal

business offices in Atlanta, Georgia.  Buffalo Wild Wings regularly conducts business in the

State of Maryland including in Montgomery County.

3.      Defendant Inspire Brands has its headquarters in Sandy Springs, Georgia. Inspire

Brands is the parent company of Buffalo Wild Wings. On information and belief, Inspire Brands

sets or approves all material policies and practices of Buffalo Wild Wings, including the policies

relating to the "Takeout Service Fee" described herein. It is jointly and severally liable for all

acts and omissions by Buffalo Wild Wings alleged in this complaint.

**JURISDICTION & VENUE**

4.      This Court has jurisdiction over this matter pursuant to Md. Code, Cts. & Jud.

Proc. §§ 1-501.

5.      This Court has personal jurisdiction over Defendants pursuant to Md. Code, Cts.

& Jud. Proc. § 6-103(b) because they did transact business at the relevant times alleged in this

Complaint, or continue to transact business, in Maryland.

6.      Venue in this Court is proper pursuant to Md. Code, Cts. & Jud. Proc. § 6-201(a)-

(b) because Defendants Buffalo Wild Wings and Inspire Brands carry on a regular business in

Montgomery County and Defendant Inspire Brands may be sued in a county in which any one of

the defendants could be sued.

**NATURE OF ACTION**

7.      This is a proposed class action seeking monetary damages, restitution, and injunctive and declaratory relief from Defendant Buffalo Wild Wings and its parent company, Inspire Brands, arising from their deceptive and untruthful menu prices offered to consumers on takeout orders.

8.      To appeal to consumers in a crowded food marketplace, Buffalo Wild Wings has promised its customers food items at appealing menu prices on its website, app, and in-store. Those prices are false for consumers who place carryout orders. In fact, all carryout orders incur an additional $0.99 "Takeout Service Fee."

9.      Throughout its stores, and like all restaurants, Buffalo Wild Wings provides prominent price displays for each of its products. Reasonable consumers like Plaintiff understand those are the true and complete prices for the food items, exclusive of government-imposed taxes and discounts for which a customer may be eligible.

10.      Buffalo Wild Wings' menu price representations are false, as the listed prices are not the true cost of food at Buffalo Wild Wings.  In fact, *after* consumers select menu items based on listed prices and customize those menu items with dips, sides, and other specifications, and after the ordering process is substantially complete, Buffalo Wild Wings surreptitiously imposes a so called "Takeout Service Fee" amounting to $0.99. This late addition of a so-called Takeout Service Fee on receipts substantially changes the menu prices for takeout food items and disguises the true cost of those items.

11.      Worse, the so-called "Takeout Service Fee" is never reasonably disclosed to consumers until it shows up as a line item on their receipts *after the purchase is complete*.

12.     Worse, the so-called "Takeout Service Fee" is itself a misnomer and a deception. The additional fee is not for any additional "service" related to the purchase of Buffalo Wild Wings food—it is part of the cost of food itself.

13.     Remarkably, Buffalo Wild Wings itself admits as much. In fine print on its website or app that it never provided to in-store purchasers and never affirmatively provided to website or app users, Buffalo Wild Wings concedes that the additional fee is not for the provision of a "service" at all, stating: "This service fee *helps us operate our takeout business*" (emphasis added). The "operation of a business" is, of course, a basic component of *any* price offered by a business. In sum, Buffalo Wild Wings admits the "Takeout Service Fee" is simply part of the cost of its food.

14.     For Buffalo Wild Wings to surreptitiously inflate food prices with a later-added "Takeout Service Fee" is false and deceptive. Buffalo Wild Wings is imposing a stealth price hike in the form of late-added fee, rather than charging a list price that reflects the actual cost to consumers of the food it sells.

15.     No other similar chain imposes a similar deception on its customers. Buffalo Wild Wings' double-edged deception—first, touting menu prices that are false; second, surreptitiously adding a "takeout service fee" on takeout customers—gives it an unfair advantage over honest sellers in the marketplace. The double-edged deception makes it impossible for consumers to comparison shop meaningfully and hinders the operation of a free and fair marketplace.

16.     When Buffalo Wild Wings, for example, offers "10 Traditional Wings" for $14.49 on its app/website or on its restaurant menus, it misrepresents and omits the truth: that "$14.49" chicken wings order *actually* costs $15.48 when carried out. This misrepresentation makes it impossible for consumers to comparison shop.

4

17.     Because the so-called "Takeout Service Fee" is added as a matter of course to *all* takeout orders, the "service fee" is by definition part of the cost of the food offered.  Buffalo Wild Wings obscures the true cost of its food by adding a so-called "Takeout Service Fee" that is simply part of the cost of its food.

18.     By falsely marketing food at menu prices that are lower than the true cost of its food to consumers, without displaying its Takeout Service Fee prior to sale, Buffalo Wild Wings deceives consumers into making food purchases they otherwise would not make.

19.     Buffalo Wild Wings misrepresents, omits and conceals material facts about the true cost of Buffalo Wild Wings food, never once informing consumers in any disclosure, at any time, that the so-called "Takeout Service Fee" in fact materially changes the menu prices of the offered food.

20.     Hundreds of thousands of Buffalo Wild Wings customers like Plaintiff have been charged more for food than the prices listed on Buffalo Wild Wings menus—prices they did not bargain for.

21.     Consumers like Plaintiff reasonably understand Buffalo Wild Wings' express menu price representations to represent the true cost of ordered food, regardless of whether the customer dines in the restaurant or carries out the food. It is not.

22.     By unfairly obscuring its true food costs, Buffalo Wild Wings deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true food costs on menus.

23.     Plaintiff seeks damages and, among other remedies, injunctive relief that fairly allows consumers to decide whether they will pay Buffalo Wild Wings' takeout food prices.

**COMMON FACTUAL ALLEGATIONS**

24.     **Buffalo Wild Wings' App and Website Fail to Bind Users to Any Terms of Service**

a.  Buffalo Wild Wings customers may place a takeout order in-store, by phone call, on Buffalo Wild Wings' website, or via Buffalo Wild Wings' app.

25.     **Buffalo Wild Wings Prominently and Plainly Represents Menu Prices Without Disclosing the Takeout Service Fee**

a.  Buffalo Wild Wings prominently features food menu prices in-store, on its website, and on its app.

b.  Such price representations are made via large signs and menus in stores and on the home page and all subsequent pages of the website and app.

26.     **Buffalo Wild Wings Omits and Conceals Material Facts About the Costs of Buffalo Wild Wings Food**

a.     The menu price disclosures were false and misleading, and the listed menu prices are inaccurate.

b.     That is because Buffalo Wild Wings applies a $0.99 "Takeout Service Fee" to all takeout orders and misrepresents what the "Takeout Service Fee" is actually for: the cost of the food.

c.     Buffalo Wild Wings' menu price representations to takeout customers are false, because the listed prices are not the true cost of food at Buffalo Wild Wings.  In fact, after consumers select menu items based on listed prices and customize those menu items with dips, sides, and other specifications, and after the ordering process is substantially complete, Buffalo Wild Wings surreptitiously imposes a so called "Takeout Service Fee" amounting to $0.99.

6

This late addition of a so-called Takeout Service Fee for takeout customers substantially changes the menu prices for food items.

d.      In store and on the phone, *after* a customer has completed her ordering request based on menu prices listed prominently on in-store signs or online, Buffalo Wild Wings surreptitiously adds a "Takeout Service Fee" of $0.99 to the receipts for all takeout orders, providing in-store customers no reasonable notice of the fee prior to payment.

e.      Online and in the app, *after* consumers select menu items based on listed prices and customize those menu items with dips and other specifications, and after the ordering process is substantially complete, Buffalo Wild Wings surreptitiously imposes a so called "Takeout Service Fee" amounting to $0.99. This late addition of a so-called Takeout Service Fee substantially changes the menu prices for food items.

f.      In short, the disclosed menu prices are not actually those listed on in-store signs nor the ones listed on the website or app.  The *actual* food price is the listed menu price *plus* the hidden "Service Charge" markup applied to all takeout Buffalo Wild Wings orders.

g.      If that were not enough, Buffalo Wild Wings misrepresents the true nature of its menu price inflation by hiding it in a deceptively named "Takeout Service Fee."

h.      The so-called "Takeout Service Fee" is a misnomer and a deception.  The additional fee is *not* for any additional "service" related to the purchase of Buffalo Wild Wings food—it is part of the cost of food itself.

i.      Remarkably, Buffalo Wild Wings admits as much. In fine print on its website or app that it never affirmatively provides in-store or to website or app users, Buffalo Wild Wings concedes that the additional fee is not for the provision of a "service" at all, stating: "This service fee helps us operate our takeout business" (emphasis added). The operation of the

7

takeout business is, of course, a basic component of any price offered by a business. In sum, even Buffalo Wild Wings agrees the "Takeout Service Fee" is simply part of the cost of its food.

j.   In March 2013, the FTC noted that the failure to disclose fees early on in the purchase process, such as the Buffalo Wild Wings' Takeout Service Fee, is likely to mislead the public: The Federal Trade Commission ("FTC") recognizes that additional fees should be disclosed before the customer "add[s] to shopping cart," and provides credit card information. The FTC also recognizes that where "a product's basic cost (e.g. the cost of the item before taxes, shipping and handling, and any other fees are added on) is advertised on one page," but the seller also intends to add "significant additional fees" on top of the basic cost, the public is likely to be misled. "[T]he existence and nature of those additional fees [should be] disclosed on the same page [as the advertised price] and immediately adjacent to the cost claim, and with appropriate prominence." *.com Disclosures, How to Make Effective Disclosures in Digital Advertising*, Federal Trade Commission (March 2013) https://www.ftc.gov/system/files/ documents/plain-language/bus41-dot-com-disclosures-information-about-online-advertising.pdf (last accessed June 17, 2022).

k.   It is false and deceptive for Buffalo Wild Wings to surreptitiously inflate menu prices with a later-added "Takeout Service Fee" on takeout orders. Buffalo Wild Wings is imposing a stealth price hike in the form of an added fee, rather than charging a list price that reflects actual business costs.

l.   Buffalo Wild Wings does not fairly inform consumers of the true costs of its food and it misrepresents its food prices on menus.

27.     **Other Restaurant Industry Actors and Buffalo Wild Wings Competitors Disclose Menu Prices Fairly and Expressly**

a.      By unfairly obscuring its true food costs, Buffalo Wild Wings deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true food costs.

b.      For example, Buffalo Wild Wings competitors Wing Stop and Hooters both offer similar food products. But unlike Buffalo Wild Wings, these competitors fairly and prominently represent their true food prices on menus—and do not surreptitiously inflate menu prices with a mis-named "Takeout Service Fee."

c.      Defendants' conduct has drawn the attention and ire of customers across the country, with angry customers taking to the Internet to voice their discontent over Defendants' broken promises.  For instance, numerous Buffalo Wild Wings employees and customers have complained on Reddit:

- o   The $1 charge makes no sense to me, my store does over 60% take out, we should be catering to take out guests not trying to take advantage of it.[1]

- o   I just checked my email receipt after football sunday yesterday. What the hell is this 'takeout fee' $1? Like I am paying for the pleasure of paying for food? I received no service. This is a scam.[2]

- o   I just placed an order for wings as I often do on Thursdays. At checkout, I noticed there was a $0.99 "Takeout Service Fee" I only get 6 wings, so this is a 12% fee for my order. Towards the bottom of the receipt there's an asterisk that said "This service fee helps us operate our takeout business"[3]

- o   Just started today...I work at one and had no idea until I saw it pop up this morning. been getting complaints all day about it.[4]

---

[1] *See* https://www.reddit.com/r/BuffaloWildWings/comments/s7ftgv/fck_bww/

[2] *Id*.

[3] *See* https://www.reddit.com/r/BuffaloWildWings/comments/s37sgi/service_charge_for_takeout_at_buffalo_wild_wings/

[4] *Id*.

o Was going to order on the app and saw the fee so placed the order in person at a "Buffalo Wild Wings Go" concept location (ironically the one next to Inspire Brands HQ) and was charged the service fee (no disclosure either)[5]

o Today i placed an order at BWW GO (you know a takeout restaurant) and was charged a hidden $1 service fee. No where on the menu does it disclose this fee. Downright scummy and deceitful. I love BWW and was super excited about the GO coming into my neighborhood. Unfortunately I can't get down with hidden fees and will not be going back ever again. Anyone else notice this??[6]

o They also didn't have anything on the menu saying you would be charged the fee. In fact I called in and asked if a phone order would have the fee and was told it didn't apply and was then charged the fee. Done with BWW and their BS.[7]

**28. Plaintiff Divane Pittman was charged this "Takeout Service Fee"**

a. On March 8, 2022, Plaintiff Divane Pittman walked in and, relying on listed menu prices, ordered food at the takeout counter of a Buffalo Wild Wings located in Bowie, Maryland, for the total amount of $25.67.

b. As part that purchase, and without her knowledge, Ms. Pittman was assessed a $0.99 Takeout Service Fee.

c. At no time prior to her purchase was Ms. Pittman made aware that the $0.99 Takeout Service Fee would be added to her purchase.

d. Accordingly, at no time prior to her purchase did Ms. Pittman realize that Buffalo Wild Wings would furtively affix a price increase on her transaction.

e. Had Ms. Pittman known that the Takeout Service Fee would be assessed on her purchase, she would not have purchased a takeout order from Buffalo Wild Wings.

---

[5] *Id.*

[6] *See* https://www.reddit.com/r/BuffaloWildWings/comments/so1cqd/service_fee_bdubs_go/

[7] *Id.*

10

## CLASS ALLEGATIONS

29.     Pursuant to Maryland Rule 2-231, Plaintiff brings this action on behalf of herself

and Classes of similarly situated persons defined as follows:

> **Maryland Class:**
> All persons in Maryland who, within the applicable statute of limitations
> preceding the filing of this action, made a takeout purchase at a Buffalo
> Wild Wings restaurant and were charged a Takeout Service Fee.
>
> **Nationwide Class:**
> All persons who, within the applicable statute of limitations, made a
> takeout purchase at a Buffalo Wild Wings restaurant and were charged
> a Takeout Service Fee.

30.     Excluded from the Classes are Defendants, any entities in which they have a

controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees and

members of such persons' immediate families, and the presiding judge(s) in this case and their

staff. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including,

without limitation, the addition of one or more subclasses, in connection with their motion for class

certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new facts

obtained during discovery.

31.     **Numerosity**:  At this time, Plaintiff does not know the exact size of the Classes;

however, due to the nature of the trade and commerce involved, Plaintiff believes that the Class

members are well into the thousands, and thus are so numerous that joinder of all members is

impracticable.  The number and identities of Class members is administratively feasible and can

be determined through appropriate discovery in the possession of the Defendants.

32.     **Commonality**:  There are questions of law or fact common to the Classes, which

include, but are not limited to, the following:

11

a. Whether during the class period, Defendants deceptively represented menu prices on food ordered in-store or through the Buffalo Wild Wings website and mobile app by failing to disclose its Takeout Service Fee;

b. Whether Defendants alleged misconduct misled or had the tendency to mislead consumers;

c. Whether Defendants engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

d. Whether Defendants' alleged conduct constitutes violations of the laws asserted;

e. Whether Plaintiff and members of the Class were harmed by Defendants' misrepresentations;

f. Whether Plaintiff and the Class have been damaged, and if so, the proper measure of damages; and

g. Whether an injunction is necessary to prevent Defendants from continuing to deceptively represent the amount of the menu price on food.

33. **Typicality**: Like Plaintiff, many other consumers ordered food from Buffalo Wild Wings, believing menu prices to be accurate based on Defendant's representations. Plaintiff's claims are typical of the claims of the Class because Plaintiff and each Class member was injured by Defendants' false representations about the true nature of the menu price. Plaintiff and the Class have suffered the same or similar injury as a result of Defendants' false, deceptive and misleading representations. Plaintiff's claims and the claims of members of the Class emanate from the same legal theory, Plaintiff's claims are typical of the claims of the Class, and, therefore, class treatment is appropriate.

34.     **Adequacy of Representation**:  Plaintiff is committed to pursuing this action and have retained counsel competent and experienced in prosecuting and resolving consumer class actions.  Plaintiff will fairly and adequately represent the interests of the Classes and do not have any interests adverse to those of the Classes.

35.     **The Proposed Class Satisfies the Md**. **Rule 2-231(c)(2) requirement for injunctive relief:** Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole. Plaintiff remains interested in ordering food from Buffalo Wild Wings; there is no way for Plaintiff to know when or if Defendants will cease deceptively misrepresenting the cost of its food. Specifically, Defendants should be ordered to cease from representing inaccurate menu prices and to disclose the true nature of the Takeout Service Fee. Defendants' ongoing and systematic practices make declaratory relief with respect to the Class appropriate.

36.     **The Proposed Class Satisfies the Md. Rule 2-231(c)(3) requirements for damages:** The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of monetary, injunctive, and equitable relief at issue for each individual Class member.

**COUNT I**
**Violation of Maryland's Consumer Protection Act,**
**Md. Code Comm. Law §§ 13-101, *et seq*.**
**(Asserted on behalf of Plaintiff and the Maryland Class)**

37.     Plaintiff is a "consumer" pursuant to Md. Code Comm. Law § 13-101(c)(1).

13

38.     Defendants are "merchants" and "persons" pursuant to Md. Code Comm. Law
§ 13-101(g)-(h).

39.     The CPA prohibits a person from engaging "in any unfair, abusive, or deceptive
trade practice" including in:

        a.   The sale, lease, rental, loan, or bailment of any consumer goods, consumer realty,
        or consumer services; and

        b.   The offer for sale, lease, rental, loan, or bailment of consumer goods, consumer
        realty or consumer services.

Md. Code. Comm. Law § 13-303.

40.     Defendants' policy and practice of charging Takeout Service Fees as alleged herein
is a violation of the CPA, including but not limited to:

        a.   False, falsely disparaging, or misleading oral or written statement, visual
        description, or other representation of any kind which has the capacity, tendency, or effect
        of deceiving or misleading consumers;

        b.   Representation that consumer goods, consumer realty, or consumer services have a
        sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity that
        they do not have;

        c.   Representation that consumer goods, consumer realty, or consumer services are of
        a particular standard, quality, grade, style, or model which they are not;

        d.   Failure to state a material fact if the failure deceives or tends to deceive;

        e.   Advertisement or offer of consumer goods, consumer realty, or consumer services
        without intent to sell, lease, or rent them as advertised or offered;

        f.   False or misleading representation of fact which concerns a price in comparison to
        one's own price at a past or future time;

        g.   Deception, fraud, false pretense, false premise, misrepresentation, or knowing
        concealment, suppression, or omission of any material fact with the intent that a consumer
        rely on the same in connection with the promotion or sale of any consumer goods,
        consumer realty, or consumer service;

        h.   Deception, fraud, false pretense, false premise, misrepresentation, or knowing
        concealment, suppression, or omission of any material fact with the intent that a consumer

rely on the same in connection with the subsequent performance of a merchant with respect to an agreement of sale, lease, or rental.

41.     Any practice prohibited by the CPA is a violation of the CPA, whether or not any consumer in fact has been misled, deceived, or damaged as a result of that practice. Md. Code. Comm. Law § 13-302.

42.     Plaintiff relied upon misrepresentations, misleading statements, deceptive practices, and false promises by Defendants which resulted in injury to her.

43.     Plaintiff has suffered an ascertainable loss of money as a result of the use or employment by Defendants of a method, act, or practice prohibited or declared to be unlawful by the provisions of the CPA.

44.     Plaintiff's actual out-of-pocket loss was proximately caused by Defendants' violation of the CPA.

45.     Should Plaintiff prevail in this action, reasonable attorneys' fees and costs are to be awarded pursuant to Md. Code. Comm. Law § 13-408(b).

## COUNT II
### Breach of Contract
### (Asserted on behalf of Plaintiff and the Classes)

46.     Plaintiff incorporates each of the foregoing allegations as if fully restated herein.

47.     Plaintiff and Buffalo Wild Wings have contracted for food, as embodied in the representations made on Buffalo Wild Wings menus and menu prices.

48.     Buffalo Wild Wings breached the terms of its contract with consumers by charging Takeout Service Fees that increased the cost of the food purchased over and above the price listed on menu items.

49.     Plaintiff and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the contract.

50.     Plaintiff and members of the Classes have sustained damages as a result of Buffalo Wild Wings' breach of the contract and breach of the implied covenant of good faith and fair dealing.

## RELIEF SOUGHT

WHEREFORE, Plaintiff on behalf of herself and the Class respectfully requests that this Court provide Plaintiff the following relief:

A.      For an order enjoining Defendants from continuing the unlawful practices set forth above;

B.      For declaratory and injunctive relief as set forth above;

C.      For an order requiring Defendants to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth above;

D.      For compensatory damages according to proof;

E.      For punitive damages according to proof;

F.      For reasonable attorneys' fees and costs of suit;

G.      For pre-judgment interest; and

H.      Awarding such other and further relief as this Court deems just, proper and equitable.

Dated:  July 12, 2022

Andrew D. Freeman (Bar No. 8612010166)
Neel Lalchandani (Bar No. 1712130303)
Lauren J. Kelleher (Bar No. 2008030009)
Brown, Goldstein & Levy, LLP
120 E. Baltimore Street, Suite 2500
Baltimore, MD 21202
Tel: (410) 962-1030
Fax: (410) 385-0869
adf@browngold.com
nlalchandani@browngold.com
lkelleher@browngold.com

/s/ Jeffrey D. Kaliel
Jeffrey D. Kaliel (pro hac vice forthcoming)
Sophia Goren Gold (pro hac vice forthcoming)
KalielGold PLLC
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783
jkaliel@kalielpllc.com
sgold@kalielgold.com

*Attorneys for Plaintiff and the Proposed Class*

## DEMAND FOR TRIAL BY JURY

Pursuant to Md. R. Civ. P. Cir. Ct. 2-325, Plaintiff on her own behalf and on behalf of all others similarly situated demands a jury trial on all claims so triable.

Dated: July 12, 2022

Andrew D. Freeman (Bar No. 8612010166)